UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond District

SATIRA SHIPPING COMPANY LIMITED,

       Plaintiff,

    v.                                Civil Action No.  3:24-cv-443

GLOBAL AMERICAN TRANSPORT LLC,

       Defendant.

## **VERIFIED COMPLAINT**

Plaintiff, SATIRA SHIPPING COMPANY LIMITED ("Satira" or "Plaintiff") by and through its attorneys, Kaufman & Canoles, P.C. and Lennon, Murphy & Phillips LLC, as and for its Verified Complaint against Defendant, GLOBAL AMERICAN TRANSPORT LLC ("Global" or "Defendant"), alleges upon information and belief the following:

## **THE PARTIES**

1.     Plaintiff is a foreign business entity duly organized and existing under the laws of the Commonwealth of the Bahamas with a business address at Campbell Maritime Center, 1st Floor, West Bay Street, P.O. Box N-7003, Nassau, New Providence, Bahamas, and was at all times relevant hereto the owner of the ocean-going motor vessel M.V. "CS Satira" (the "Vessel").

2.     Upon information and belief, Defendant is a foreign business entity duly organized and existing under the laws of the state of Illinois with a business address at 77 West Wacker Drive, 45th Floor, Chicago, Illinois, 060601, USA and was at all times relevant hereto the charterer of the Vessel.

3.      Upon information and belief, garnishee Bank of America ("BofA") is a federal bank entity authorized to do business in the state of Virginia with a principal office address of 100 N. Tryon St, Charlotte, NC, 28202-2135 and with a business address of 1111 E. Main Street, Richmond, VA 23219. BofA is believed to hold property belonging to Defendant.

## SUBJECT MATTER JURISDICTION

4.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Subject matter jurisdiction is appropriate pursuant to 28 U.S.C. § 1333.

## FACTUAL BACKGROUND

5.      By a charter party dated July 7, 2023 (hereinafter "Charter Party"), Plaintiff, as Owner, chartered the Vessel to Defendant, as Charterer, for a time charter trip from Poti, Georgia to Rizhao, China with a laycan[1] of July 17, 2023 through  July 20, 2023. *A true and correct copy of the Charter Party is attached hereto as Exhibit A ("Ex. A").*

6.      The Charter Party provides that delivery was to be made effective as the Vessel was passing Canakalle, Turkey. *See Ex. A. at Clause 3.*

7.      The Charter Party provides that redelivery of the Vessel was to be made effective at Rizhao, China, upon "DLOSP."[2] *Id. at Clause 6.*

8.      The Charter Party provides that the Charterer will pay hire of $9,500.00 per day payable every 15 days in advance, with 20 days of hire to be paid within three banking days after the Vessel's delivery. *Id. at Clause 7.*

---

[1] The "laycan" is the date by which an owner must deliver the vessel to charterer failing which a charterer is at liberty to cancel the charter party and find another vessel to carry its cargo.
[2] Dropping Last Outward Sea Pilot.

9.      The Charter Party provides the "Bunkers expected on delivery as on board to be about 510-560 MTONS[3] VLSFO[4] and about 120-160 MTONS LSMGO.[5] Bunkers on re-delivery to be about same quantities as on delivery." *Id. at Clause 8.*

10.      The Charter Party provides that the Defendant was "to pay on redelivery a lumpsum of USD 10.000.00 in lieu of hold cleaning excluding removal and disposal of dunnage, debris, lashing materials." *Id. at Clause 9.*

11.      The Charter Party provides that English Law governs the agreement and disputes are to be submitted to Arbitration in London, United Kingdom. *Id. at Clause 17.*

12.      Plaintiff properly delivered the Vessel to Defendant on July 16, 2023 in accordance with the terms of the Charter Party. *See, Defendant's Pre-Final Hire Statement attached hereto as Exhibit B ("Ex. B.").*

13.      The Defendant promptly paid hire to the Plaintiff during the charter, and performance of the Charter Party passed without incident until the Vessel was improperly redelivered by Defendant to Plaintiff on October 12, 2023 at the Zhoushan Anchorage, China, rather than at Rizhao, China, as required by the Charter Party. *See, Ex.'s A, B, and Correspondence Regarding Redelivery of Vessel attached hereto as Exhibit C ("Ex. C.").*

14.      On October 13, 2023, Defendant issued a Pre-Final Hire Statement that included its calculation of amounts due and owing to Plaintiff based upon amounts due for hire and various credits to which Charterer's believed it was entitled. *See Ex. B.*

15.      Defendant's Pre-Final Hire Statement noted that the Vessel was delivered with 575.90 metric tons of VLSFO, which was valued at USD 600 per metric ton, according to the

---

[3] Metric Tons.
[4] Very Low Sulfur Fuel Oil.
[5] Low Sulfur Marine Gas Oil.

terms of the Charter Party, and 147 metric tons of LSMGO at USD 720 per metric ton, according to the terms of the Charter Party. The statement further noted that the Vessel was re-delivered with only 516.557 metric tons of VLSFO and only 112.902 metric tons of LSMGO. *Id.* Defendant's failure to re-deliver the Vessel with "about same quantities as on delivery" was a breach of the Charter Party. *See Ex. A.*

16.     Defendant's Pre-Final Hire Statement included a unilateral credit in its favor of $20,000.00 for "Redelivery at…different port nearer to vessel's next destination Shanghai Shipyard." *See, Ex. B.* Nothing in the Charter Party permitted such a credit and Defendant was obligated to redeliver the Vessel at Rizhao, China and its re-delivery of the Vessel at Zhoushan Anchorage was a further breach of the Charter Party. *See Ex. A.*

17.     Defendant's Pre-Final Hire Statement also included a unilateral credit in its favor in the amount of $5,937.50 for alleged underperformance of the Vessel. *See Ex. B.* Such deduction was a further breach of the Charter Party.

18.     Finally, Defendant's Pre-Final Hire Statement failed to include $10,000.00 owed to Plaintiff pursuant to the ILOHC[6] clause of the Charter Party. *See Ex. A* at Clause 9. Failure to include such sum was a further breach of the Charter Party.

19.     Ultimately, Defendant calculated Owner was owed $78,285.45 at the conclusion of the Charter Party. *See Ex. B.*

20.     Plaintiff's Statement on Account calculated that Plaintiff was owed $115,594.91. *See Campbell's Statement on Account attached hereto as Exhibit D ("Ex. D.").*

---

[6] In Lieu of Hold Cleaning.

21.     Ultimately, Plaintiff made a demand to Defendant for the payment of the outstanding amount of $115,694.91 owed under the Charter Party. *See Demand for Payment attached hereto as Exhibit E ("Ex. E.")*.

22.     To date, Defendant has failed to make payment of the amounts due and owing to the Owner and, in total, $115,694.91 remains outstanding under the Charter Party, excluding interest.

23.     Additionally, between October 9, 2023 and October 12, 2023, Defendant entered into an agreement with Sing Fuels Pte Ltd (the "Suppliers") for the supply of fuel ("bunkers") to the Vessel and such bunkers were placed on board the Vessel by Suppliers on October 12, 2023. *See Bunker Invoice attached hereto as Exhibit F ("Ex. F.")*.

24.     On June 7, 2024, Suppliers contacted Plaintiff, informing it that Defendant had failed to pay for the bunkers, amounting to $352,754.06, and that Suppliers intended to hold the Plaintiff and/or the Vessel *in rem* liable for the bunkers provided to the Vessel on October 12, 2023. The Suppliers have threatened to assert a maritime claim against the Vessel and seek arrest of the Vessel and/or other property of the Plaintiff. *See Correspondence from Suppliers attached hereto as Exhibit G ("Ex. G.")*.

25.     In breach of the Charter Party no lien clause, Defendant has improperly allowed a maritime claim and maritime lien to accrue against the Vessel and, through its misconduct has damaged the Plaintiff and exposed it to a claim for payment of the bunkers in the amount of $352,754.06. *See Ex. A. at Clause 90.*

26.     On June 3, 2024, Plaintiff commenced arbitration against the Defendant in London, United Kingdom to collect the foregoing amounts. *See, Notice of Arbitration attached hereto as Exhibit H ("Ex. H.")*.

27.     As best as may presently be estimated, and upon information and belief, Plaintiff has, or will, incur legal fees and costs in pursuing arbitration in the sum of GB£40,000, plus another GB£20,000 for arbitrator fees, amounting to $76,500.

## BREACH OF MARITIME CONTRACT

28.     Paragraphs 1 through 27 of this Verified Complaint are repeated and realleged as if the same were more fully set forth at length herein.

29.     Defendant's failure to make payment of amounts due and owing to Plaintiff under the Charter Party constitutes a breach of a maritime contract.

30.     Defendant's failure to pay for bunkers provided by the Suppliers permitted a maritime lien to accrue against the Vessel which constitutes a breach of a maritime contract.

31.     As a result of the Defendant's aforesaid breaches the Plaintiff has suffered, and will continue to suffer, $592,518.94 as follows:

| | | |
|---|---|---|
| A. | Amounts Owing Under Charter Party - | $115,694.91; |
| B. | Liability for Bunkers provided to Vessel - | $352,754.06; and |
| C. | Fees and Costs - | $76,500.00 |
| D. | 1.5 years interest on A+B @ 6.5% compounded quarterly - | $47,569.97 |
| | TOTAL: | $592,518.94 |

## CLAIM FOR RULE B ATTACHMENT

32.     Paragraphs 1 through 31 of this Verified Complaint are repeated and realleged as if the same were more fully set forth at length herein.

33.     Plaintiff brings this action pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Supplemental Rule B") seeking to attach Defendant's property located within the hands of third-party garnishees within

this District of this Court to obtain *quasi in rem* jurisdiction over the Defendant and to secure Plaintiff's claims.

34.     Upon information and belief, and after investigation, the Defendant is a foreign business entity duly organized and existing under the laws of the state of Illinois with a business address of 77 West Wacker Drive, 45th Floor, Chicago, Illinois, 060601, USA and was at all times relevant hereto the charterer of the Vessel and cannot be found within this District within the meaning of Supplemental Rule B. *See Declaration of Patrick M. Brogan filed contemporaneously herewith.*

35.     Upon information and belief, Defendant maintains a bank account at third-party garnishee Bank of America located at 1111 E. Main Street, Richmond, VA 23219.

36.     Upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of the third-party garnishee Bank of America within this District with a business address of 1111 E. Main Street, Richmond, VA 23219.

37.     Plaintiff seeks an Order from this Court directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment Pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, attaching *inter alia*, any assets of Defendant held by any garnishees within this District, including but not limited to Bank of America, for the purposes of obtaining jurisdiction over Defendant and securing the Plaintiff's claims, as described above in the total sum of $592,518.94.

**WHEREFORE**, Plaintiff, Satira Shipping Company Limited, demands judgment as follows:

A.      That process in due form of law issue against Defendant citing it to appear and answer under oath all and singular the matters alleged in this Verified Complaint, failing which default judgment be entered against it in the sum of $592,518.94, which constitutes damages for Defendant's breach of the Charter Party, without prejudice to Plaintiff's rights to seek additional amounts based on further accrual of such amounts;

B.      That since Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, the Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts, and monies, tangible or intangible, or any funds up to the amount of, at minimum, $592,518.94, belonging to, due or being transferred to, from or for the benefit of Defendant, including but not limited to such property as may be held, received, or transferred in Defendant's name or as may be held, received, or transferred for its benefit at, moving through, or within the possession, custody or control of Bank of America at 1111 E. Main Street, Richmond, VA 23219 and any other garnishees to be named, and that all persons claiming any interest in the same be cited to appear and pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure answer the matters alleged in this Verified Complaint;

C.      That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

     D.     That this Court award Plaintiff any additional damages, attorneys' fees, and costs incurred in this action, or other amounts to which it may be found to be entitled; and

     E.     For such other and further relief as the Court deems just and proper.

Dated:  June 17, 2024                      SATIRA SHIPPING COMPANY
                                         LIMITED

By: /s/ *Patrick M Brogan*
        Patrick M. Brogan (VSB 25568)
        KAUFMAN & CANOLES, P.C.
        150 W. Main Street, Suite 2100
        Norfolk, Virginia 23510
        (757) 624-3115 (T)
        (888) 360-9092 (F)
        pmbrogan@kaufcan.com

        Patrick F. Lennon
        Steven R. Winters
        LENNON, MURPHY & PHILLIPS, LLC
        The Graybar Building
        420 Lexington Ave., Ste. 300
        New York, New York 10170
        (212) 490-6050 (T)
        (212) 490-6070 (F)
        pfl@lmplaw.net
        srw@lmplaw.net